DECISION AND JUDGMENT ENTRY
{¶ 1} Bridget R., the biological mother of Nicholas R., appeals from a judgment issued by the Huron County Common Pleas Court, Juvenile Division, granting permanent custody of her son to the Huron County Department of Job and Family Services. Because we conclude that the trial court acted properly after finding by clear and convincing evidence that it was in the best interest of the child to have permanent custody transferred to the agency, we affirm.
 FACTS {¶ 2} Nicholas R. was born in 1996 to Bridget R. and James R. He lived in Norwalk, Ohio with his mother, father, step-brother Daniel D.P., and step-sister Savannah L.P. After an incident on April 22, 2001, when Norwalk police were called to the home because of James R.'s intoxication, the children were removed from their house and were transferred to foster care. Daniel and Savannah were placed with their maternal grandparents and Nicholas was eventually adjudicated a dependent child on June 18, 2001. He was placed initially with the S. family and in December 2001 with the J. family.
 {¶ 3} At the outset, Nicholas was a six-year-old with the behavior of a three-year-old. He frequently soiled himself. He did not know letters or colors. Under the care of the J. family, he began to act like other children his age, relapsing only after the infrequent visits by his natural parents. After a visit with his father, Nicholas would act out sexually, touch his classmates in improper places, and use vulgar language.
 {¶ 4} Bridget and James separated after the children were removed from the family home. James moved back in with his parents, and Bridget got an apartment with the aid of a social worker. The general living conditions did not improve for either, however. James had no permanent address and Bridget's apartment was unsanitary, becoming infested with lice and unfit for children.
 {¶ 5} On July 2, 2002, the Huron County Department of Job and Family Services filed a motion to assume permanent custody of Nicholas. A hearing was held September 26 and 27, 2002. Many individuals testified: three individuals from Firelands Counseling and Recovery Services — James's counselor, Nicholas's therapist, and Bridget's case manager; the Director of Nursing at the Huron County Health Department; both foster mothers; Nicholas's guardian-ad-litem; the family caseworker from Children's Services; and both of Nicholas's parents. All testified as to how well the parents would succeed if Nicholas was returned to either. The testimony at the two-day hearing, led the court to award permanent custody of Nicholas to the Huron County Department of Job and Family Services.David — we have to briefly discuss the contravening testimony here, I think
 Assignments of Error {¶ 6} Appellant alleges three assignments of error.
 {¶ 7} "1. The trial court erred in granting permanent custody of the child where mother had substantially remedied the situation which instantly caused the removal of the child.
 {¶ 8} "2. The trial court erred in granting permanent custody of the child where mother's actions showed a willingness to provide an adequate permanent home for the child and where the evidence demonstrated a willingness to provide shelter.
 {¶ 9} "3. The trial court erred in finding that it was in the child's best interest to have permanent custody granted to the Department of Job and Family Services."
 {¶ 10} The three assignments of error attack the underlying decision of the trial court. Before discussing the assignments of error separately, we will turn to the November 1, 2002 judgment entry.
 {¶ 11} The trial court began by citing R.C. 2151.353(A)(4) (disposition of dependent child on application of agency for permanent custody). It entered findings of fact and conclusions of law as required by the statute. The judgment entry states, "[t]he parents have continuously and repeatedly failed to comply with the terms of the case plan, despite support from the social worker and others in the community." The trial court set forth steps that the social worker had attempted. "Throughout the life of this case, the social worker has made bi-weekly or monthly visits with the mother and father. During these visits the social worker has explained the case plan to the parents, and attempted to direct them to services that can assist them in complying with the requirements of the case plan." The Court also found neither parent could provide a safe place for Nicholas R. geared toward his special needs: "Services have been provided to the parents to help them address these issues, but they still have failed to remedy these problems. The fact that services have been provided, but not utilized demonstrates an unwillingness to provide an adequate permanent home for Nicholas."
 {¶ 12} The trial court also awarded permanent custody of Nicholas to the Huron County Department of Job and Family Services because of the amount of time Nicholas had been in the temporary custody of the Huron County Department of Job and Family Services; the inability of Nicholas to be "reunited with his parents within a reasonable amount of time" as required by statute; Bridget's mental health issues, which make her unable to provide Nicholas with needed supervision and a safe living environment; and James's continuing substance abuse problem and failure to comply with court orders.
 {¶ 13} The transcript supports these conclusions. Both James and Bridget were previously ordered by the trial court to participate in programs to aid them in managing their particular issues — in hopes of family reunification. James was ordered to attend Alcoholics Anonymous meetings but did not comply. He was twice terminated from the program because he did not interact with the group during therapy as required. When switched to individual sessions because he did not like the group dynamic, he still did not comply. The trial court commented that James could spend over $160 a month on cigarettes but not $51 a month for child support. Even though he was referred by his social worker to the Metropolitan Housing Authority to find a permanent place to live, James continues to live with different family members. He refused to cooperate with his social worker to complete his court ordered home study. He violated a direct court order by taking Nicholas to visit James R.'s father who had a history of child molestation.
 {¶ 14} For her part, Bridget was ordered by the juvenile court to attend the Partial Hospitalization Program. This was mandatory rather than voluntary. Her participation was terminated because of 50 percent attendance and the lice problem. Bridget would forget her appointments, including doctors' appointments, when notified several weeks ahead of time. Even if reminded closer to the appointment, she did not attend. She would not attend even when rides were offered to her by her social worker and others. The trial court also noted Bridget "failed to immunize Nicholas on time, putting him at an increased risk of infectious disease."
 {¶ 15} Bridget has a history of not taking her medication, which causes her to have violent thoughts. She lacks the ability to care for herself and others when she does not take her medication; once she was found in her apartment with the windows wide open in the winter — naked and in a pool of urine. She was hospitalized in St. Charles Mercy Hospital from January 8, 2002 to January 24, 2002 for mental issues. On more than one occasion, she fell asleep on the couch with lit cigarettes — causing several large burns on her couch. Dangerous household objects such as knives, scissors, and other sharp objects were in the reach of young children. Even though homemaker services were offered, they were ultimately terminated because of the lack of participation.
 {¶ 16} Testimony in the record shows that Nicholas needs a supervised and structured environment to develop those skills that will allow him to become a productive member of society. As the judgment entry stated: "Nicholas has been diagnosed with reactive attachment disorder and has other special needs that require structure and consistency in his life. Continued treatment and quality of care givers are two things that will be crucial to Nicholas's future development."
 {¶ 17} The trial court reasoned that these needs were better served by granting Nicholas's permanent custody to the Huron Department of Job and Family Services.
 Permanent Custody Clear and Convincing Evidence Standard {¶ 18} The standard for appellate review in a permanent custody case is whether the trial court had clear and convincing evidence to make a permanent custody adjudication. Recently, In the Matterof Baby Girl Doe, we whose court is this??
ruled that "[t]he R.C. 2151.414 permanent custody determination must be supported by clear and convincing evidence.something is missing — is this the case standing for the proposition or is Baby Doe?
In re Hiatt (1993), 86 Ohio App.3d 716, 725, 621 N.E.2d 1222. On appeal from an order terminating parental rights, an appellate court will not reverse the trial court's judgment if, upon a review of the record, it determines that the trial court had sufficient evidence to satisfy the clear and convincing standard. In re Wise (1994), 96 Ohio App.3d 619,626, 645 N.E.2d 812. The `clear and convincing evidence' standard is a higher degree of proof than the `preponderance of the evidence' standard generally utilized in civil cases but is less stringent than the `beyond a reasonable doubt' standard used in criminal cases. State v. Schiebel
(1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. An appellate court will not substitute its own judgment for that of a trial court applying a `clear and convincing evidence' standard where some competent and credible evidence supports the trial court's factual findings. Id.; C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,8 Ohio Op.3d 261, 376 N.E.2d 578, syllabus." In the Matter of Baby Girl Doe,149 Ohio App.3d 717, 2002-Ohio-4470 at ¶ 89.
 {¶ 19} This standard applies to cases decided under either R.C. 2151.353(A)(4)[1] (regarding custody petitions for abused or neglected child) or R.C. 2151.414(B)(1)(d)[2] (regarding permanent custody petitions after 12 months of temporary custody). Id.; In the Matter ofAndrew B., 6th Dist. No. L-01-1440, 2002-Ohio-3977 at ¶ 53.
 Permanent Custody Best Interest of the Child Standard {¶ 20} The standard for determining the best interest of the child in permanent custody hearings is set by R.C. 2151.414(D).[3] The major factors to be considered, include, without limitation: the relationship of the child with others in his life; the child's wishes; how long the child has spent in custody; and the need for secure placement. See R.C. 2151.414(D)(1) through (4). The statute then cross-references factors in R.C. 2151.414(E)(7) through (11) as part of the non-exclusive list. These relate to a variety of parental wrongs visited upon a child, from certain felony convictions to abandonment and involuntary termination of parental rights. We have noted that the legislature has chosen the "best interests of the child" standard to ensure that our trial courts protect children of this state. In the Matter of Reynolds (Mar. 7, 1986), Lucas App. No. L-85-154. The same philosophy has been adopted by other states. See Mich.Comp. Laws 722.23; Minn. Stat. 518.17.
 {¶ 21} As seen, R.C. 2151.414(D) is written broadly and requires the juvenile court judge to consider all relevant factors before terminating parental rights. It is not a decision to be made lightly. The juvenile court has discretion in determining a child's best interest. The judge views the witnesses and observes their demeanor, gestures, and voice inflections. These observations in weighing the credibility of the proffered testimony cannot be conveyed to a reviewing court by a printed record. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80; cf. Miller v. Miller (1988), 37 Ohio St.3d 71. A permanent custody order should not be overturned unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219 (defining "abuse of discretion"). In re Awkal (1985), 95 Ohio App.3d 309, 316; See also, In reMarshall (July 12, 1996), Geauga App. No. 95-G-1934; In re Shchigelski
(Oct. 20, 2000), Geauga App. No. 99-G-2241.
 {¶ 22} With these standards of review in mind, we turn to the assignments of error.
 The First Assignment of Error {¶ 23} In support of her first assignment of error, Bridget argues the trial court erred because it made incorrect findings under R.C. 2151.414(E), the statute that details what a court must do before terminating parental rights. She asserts that the evidence showed she had substantially remedied her home situation.
 {¶ 24} Appellee Huron County Department of Job and Family Services responded that R.C. 2151.414(B)(1)(d) is the appropriate statute because Nicholas was in custody for over 12 consecutive months in a 22 month period. When a permanent custody petition is based upon temporary custody existing longer than 12 months, (see R.C. 2151.414(B)(1)(d)), some courts simply analyze under R.C. 2151.414(D) to see if granting permanent custody to the agency is in the best interest of the child. In the Matterof Danni-Jo Nice, 141 Ohio App.3d 445, 458, 2001-Ohio-3214. Nevertheless, in Nicholas R.'s case, the trial court relied on R.C. 2151.353(A)(4), rather than the section allowing permanent custody applications after 12 months of temporary custody. In fact, the trial court made specific reference to R.C. 2151.414(E)(1).[4] is this true???
As we noted in the case of In the Matter of Christina Y and TabbythaY. (June 9, 2000), Huron App. Nos. H-99-023, H-99-022, a reviewing court must address certain questions when R.C. 2151.414(E)(1) is an issue:
 {¶ 25} 1.) Was the child was placed outside the home?
 {¶ 26} 2.) Was the agency diligent in trying to remedy the situation through reasonable case planning?
 {¶ 27} 3.) Did the parent fail continuously and repeatedly to remedy the condition that caused the child to be removed?
 {¶ 28} 4.) Were all elements proved by clear and convincing evidence?
 {¶ 29} In this case, the record shows the answer to all four questions is yes. Nicholas has been under the temporary custody of the Huron County Department of Job and Family Services consecutively for over 12 months. The Huron County Department of Job and Family Services put into action a reasonable case plan for both James and Bridget to follow but neither of Nicholas's parents complied with it. Bridget's statement that she has complied with the case plan is contradicted by the record. Her apartment continues to be an unhealthy place to raise children, not simply because of lice.
 {¶ 30} Bridget's unsuccessful efforts to rid herself and her apartment of lice played a role in the trial court's determination but so did other concerns. For example, the caseworker from Children's Services remembered seeing holes in Bridget's couch and carpet at her old house where she would fall asleep on the couch with burning cigarettes. This is still a concern at her new apartment because Bridget has not taken steps to change old habits. She has continuing mental health issues, which she has not fully addressed, and she had, at best, lackluster attendance at the Partial Hospitalization Program. The caseworker with Children's Services further testified at the hearing that Bridget seemed to be relapsing into the same sort of habits, both mental and environmental, that were a partial cause of the children's removal.
 {¶ 31} The witnesses testifying about specific instances from their own contact with Bridget provided clear and convincing evidence that permanent custody should be awarded to the Huron County Department of Job and Family Services. Therefore, Bridget's first assignment of error is found not well taken.
 The Second Assignment of Error {¶ 32} Bridget's second assignment of error states that the trial court failed to properly interpret R.C. 2151.414(E)(4) and R.C. 2151.414(E)(14)[5] , which allow a court to consider whether a parent can provide an adequate permanent home and the basic necessities for the child. The record indicates that Bridget did not visit with Nicholas on a consistent basis as R.C. 2151.414(E)(4) requires. When she did, she was detached from Nicholas — letting James play with and talk to him. The record also relates that Nicholas's foster parents would not tell him when his parents were coming to visit because, on more than one occasion, Bridget and James would schedule a time to meet with Nicholas and then not show up. This had a negative effect on the child, and when he spent time with either of his parents, he regressed to the point of soiling himself.
 {¶ 33} As to R.C. 2151.414(E)(14) (willingness to provide necessities), the record reflects, by clear and convincing evidence, numerous instances where Nicholas was neglected and would continue to be so if he were returned to Bridget. Neither parent kept Nicholas's inoculations up to date; Bridget still lives in unsanitary and unsafe conditions; she leaves dangerous objects lying around the house where a child could be hurt; she has not yet remedied the lice problem. She has a habit of not taking medicine, which causes her, as well as those around her, to be in danger because of her "violent thoughts" and erratic behavior. This is especially important because Nicholas has mental health issues of his own that require his caregiver to be even more vigilant in safeguarding his physical and mental health. Therefore, Bridget's second assignment of error is found not well taken.
 The Third Assignment of Error {¶ 34} Bridget's last assignment of error is that the trial court's decision to place Nicholas in the permanent custody of the Huron County Department of Job and Family Services was not in the best interest of the child. The record contradicts this assertion. The trial court in its November 1, 2002 judgment entry specifically stated that, "[t]he Department has shown by clear and convincing evidence that it is in the child's best interest to be placed into the Department's custody, and that the child has spent twelve or more months of a consecutive 22-month period in the temporary custody of the Department." This statement relates to R.C. 2151.414(D)(3), which concerns the time period a child is in agency custody and what effect it has on the best interest of the child.
 {¶ 35} The record also reflects that Nicholas's interaction and relationship with his natural parents causes him to regress while interaction and relationship with his foster parents has resulted in Nicholas beginning to act his age. His sexual actions after visits with his natural parents are also relevant under R.C. 2151.414(D)(1). Although the trial judge did not specify what factors were reviewed under R.C. 2151.414(D), this does not mean that he did not consider them in determining the best interests of the child. A trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision. See, State v. Heyman (Aug. 13, 1996), Franklin App. No. 96APF02-194; In the Matter of Kemarra Day (Feb. 15, 2001), Franklin App. No. 00AP-1191; In the Matter of Kenneth Dyal, 4th Dist. No. 01CA12,2001-Ohio-2542.
 {¶ 36} Upon review of the evidence presented, we find the trial court acted properly when it considered the clear and convincing evidence in front of it and ordered that it was in the best interest of the child to have the Huron County Department of Job and Family Services take permanent custody of Nicholas. As a result, Bridget's third assignment of error is found not well taken.
 {¶ 37} On consideration whereof, we find that substantial justice was done to the party complaining, and the judgment of the Huron County Common Pleas Court, Juvenile Division is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
Handwork, P.J. and Singer, J., concur.
[1] R.C. 2151.353(A)(4) provides:
"(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
* * *
(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 [2151.41.4] of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
[2151.41.4] of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."
[2] R.C. 2151.414(B)(1)(d) provides:
"(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28
of the Revised Code or the date that is sixty days after the removal of the child from home."
[3] R.C. 2151.414(D) provides:
"(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) of section 2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
[4] R.C. 2151.414(E)(1) provides:
E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [ 2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
[5] R.C. 2151.414(E)(4) (14) provide:
(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [ 2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
* * *
(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.